**Samuel J. CHASE and Jeannette S. Chase, Petitioners,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 15090.**

United States Court of Appeals
Ninth Circuit.

March 25, 1957.

Leslie W. Irving, Oakland, Cal., for petitioners.

Charles K. Rice, Asst. Atty. Gen., Helen Buckley and Lee A. Jackson, Washington, D. C., for respondent.

Before HEALY and FEE, Circuit Judges, and EAST, District Judge.

JAMES ALGER FEE, Circuit Judge.

This case involves a single issue of law. The facts are all established by stipulation of the parties.

The question is whether the taxpayers [1] are entitled to have the sum of $22,500, allotted to Samuel J. Chase by the California Probate Court for extraordinary services rendered to the estate of George L. Leiter, deceased, and received during that year, taxed under Section 107 (a) of the Internal Revenue Code of 1939.[2]

Chase was one of the executors of the Leiter estate. He was a lawyer. He rendered extraordinary services in connection with the case of Chase v. Leiter, 96 Cal.App.2d 439, 215 P.2d 756, a case filed in the state court of California, which involved the construction of the will and the right to possession of certain assets. On August 29, 1951, an amended petition for compensation for extraordinary services rendered by Chase and Irving, his attorney, in connection with this case was filed. The matter came on for trial on December 7, 18, 19, 20, 1951, and January 31, 1952. Evidence, oral and documentary, was submitted. On February 14, 1952, the Superior Court of California determined the reasonable value of his extraordinary services in this case was $22,500, and he was paid that sum in 1952. These extraordinary services had covered more than thirty-six calendar months. The court made the same type of award to Irving, then the attorney for the estate.

After the final decision of the case of Chase v. Leiter, the federal Internal Revenue Service began an audit of the income tax returns of George and Ida Leiter for the period 1941 to 1946. The agent advised Chase and his attorney that additional taxes were proposed, amounting with interest to $210,202.56. After negotiation, settlement was made of the demand in the amount of $46,410.14. Thereafter, claim for refund of federal estate taxes paid was filed, and in August, 1952, a refund of $45,549.04 was received.

Thereupon, a petition for allowance for extraordinary services performed by Chase and by his attorney, primarily in connection with federal income tax of the estate, was filed with the state court. The matter was formally tried. Witnesses were examined. On November 12, 1953, the state court determined the reasonable value of the extraordinary services rendered by Chase in the income tax matter was $20,000.

Petitions of Chase and his wife, Jeannette S. Chase, who filed separately for a redetermination of claimed deficiencies, were filed in the Tax Court. A stipulation of all of the facts was filed. The Tax Court also found the services of Irving, the attorney for Chase "in connection with this litigation [of the estate] divisible from his other services rendered as attorney for the estate." [3]

But, on the other hand, it was held that, since Chase was the executor at all times, he was liable to additional tax. The court say: All of his services compensated by the estate were services rendered by him as executor. The court held that Section 107(a) of the Internal Reve-

---

1. Samuel J. and Jeannette S. Chase, husband and wife, petitioners herein.

2. "Personal services. If at least 80 per centum of the total compensation for personal services covering a period of thirty-six calendar months or more (from the beginning to the completion of such services) is received or accrued in one taxable year by an individual or a partnership, the **tax attributable to any part**

thereof which is included in the gross income of any individual shall not be greater than the aggregate of the taxes attributable to such part had it been included in the gross income of such individual ratably over that part of the period which precedes the date of such receipt or accrual." 26 U.S.C.A. (I.R.C. 1939) § 107(a).

3. Leslie W. Irving, 25 T.C. 398.

nue Code of 1939 did not apply to the sum of $22,500 received in 1952 for extraordinary services rendered to the estate in the litigation above mentioned in the case of Chase v. Leiter, where other commissions were received in 1950 for ordinary services rendered and in 1953 the $20,000 was received for extraordinary services in connection with the income tax computation and litigation, because the $22,500 received in 1952 was less than 80 per cent of the total amounts received in 1950, 1952 and 1953.

■ Since there is no question of fact involved, we must reverse the case on the legal conclusion that a lawyer, as executor, cannot collect compensation for extraordinary professional services which arise in connection with a specific piece of litigation. The executor would have been required to hire another lawyer to perform these services if he had not been a lawyer himself.

The Tax Court decided Irving could treat his fee for legal services in Chase v. Leiter as a payment received for a project independent of his other personal services to the estate and upon which he had worked in various years, while at the same time they ruled that Chase could not. In order to justify this apparent anomaly, they indicate that Irving was not technically the attorney for the estate at the time of his services in this particular litigation, although he was at the time of the income tax negotiations. This attempted distinction illuminates no actual difference and approaches rationalization. The Tax Court was correct in the ruling as to Irving. Chase v. Leiter was a specific project. It might be compared to the writing of a book or the development of a patented device by an inventor, the reward for which was received in one year. There could be no distinction between Chase and Irving. There can be no doubt that both represented the estate in the Chase v. Leiter litigation. Each was a lawyer. Each engaged in a specific lawsuit filed in a court. Each performed professional services for a period of over three years

on this independent litigation. Each received compensation for this independent litigation in the same year in a lump sum. Each subsequently performed other services for the estate as executor and as attorney, respectively. But these cannot be correlated with the professional function performed by either in Chase v. Leiter.

As executor, Chase had the duty of collecting the assets of the estate. Undoubtedly, if he had driven a truck to collect personal property of the estate in each of the three years and received compensation for extra services to the estate in the second year or the last year, he would not have been entitled to come under this rule. He might have received compensation for accounting services in the same manner and still have been unable to invoke the rule.

Just because all of the compensation was received as executor does not mean that it all must be taxed together. The distinction drawn in the case of the lawyer hired by the executor applies equally as well to the executor as a lawyer. It has always been recognized that the services in connection with a case must be compensated to a lawyer above and beyond his ordinary retainer, beyond compensation for his regular services and beyond any salary he may be receiving. The state court recognized the distinction both in the case of the lawyer hired by the executor and in the case of the executor as a lawyer. While a federal court is not bound to follow a state court in tax matters, the reasoning is so logical that there seems no escape.

■ Section 107 of the 1939 Code was added to prevent a hardship which had arisen for writers, inventors and others who work long periods of time and then receive their full compensation upon the completion of the undertaking. A lawyer who is working on a specific case is in that class. Formerly such a person had the income for the whole period aggregated into the final year, with resulting tax hardship. This case comes within the intent of Congress in

enacting the new section. Here there were two special cases, separate and distinct from his duties as executor, on account of his professional character. He was not himself bound to perform these "personal services" as executor of the estate. If the executor had hired an accountant for a special project, he would have had to pay a fee. If he had hired a second lawyer, he would have had to pay a special fee.

As we view it, the employment for the case of Chase v. Leiter was for a separate and independent undertaking. This distinction between the ordinary employment or retainer of a lawyer and his retention as counsel in a specific case filed in court is well settled and supported by professional practice of ancient standing. This case of Chase v. Leiter is an entity. It is unaffected by the fact that he may have had compensation for ordinary personal services as an executor before or afterward or that he may have received compensation in some other case in a subsequent year which was similarly segregated. The fees which he received as a lawyer for services in this litigation of Chase v. Leiter were received not primarily as executor, but as counsel. The situation is not the same as that where compensation for personal services has been broken up into several accountings. Chase, the lawyer in Chase v. Leiter, was not performing services as executor. If he had been a layman, he would have been required to have hired another lawyer or to have paid vastly increased compensation to Irving.

As this Court views the matter, there could be no valid distinction between the situation of Chase and Irving in regard to compensation for professional services in the specific case of Chase v. Leiter. We are of opinion that the Tax Court was correct in the ruling as to Irving on the grounds hereinabove outlined. The same rationale requires that Chase have the advantage of a similar ruling as a matter of law.

Reversed.