Arthur Gladstone Bush v. Commissioner.
Bush v. Commissioner
Docket No. 58857.
United States Tax Court
T.C. Memo 1957-57; 1957 Tax Ct. Memo LEXIS 195; 16 T.C.M. (CCH) 243; T.C.M. (RIA) 57057; March 29, 1957
*195 Curtis Bush, Esq., for the petitioner, Drew R. Tillotson, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion This proceeding involves a deficiency in income tax of petitioner for the year 1952 in the amount of $1,329.23. The sole issue is whether petitioner is entitled to the benefits of section 107(a) of the Internal Revenue Code of 1939. Findings of Fact The stipulated facts are found accordingly. Petitioner, since 1895, has been a duly licensed and practicing attorney-at-law with offices at Davenport, Iowa. His return for the calendar year 1952 was filed with the district director of internal revenue for the district of Iowa. On July 7, 1927, Harry I. Klepper, a resident of St. Louis, Missouri, died testate. On July 9, 1927, his will was admitted to probate. The St. Louis Union Trust Company and Fred G. Zeibig were named executors and trustees of decedent's estate and duly qualified. The decedent's will, after making certain bequests, devised and bequeathed the remainder of his estate to his trustees in trust, to pay the income, rents, and profits, in equal shares to his four sisters for life. On the death of the survivor of the *196 life beneficiaries, the corpus was to be paid over the decedent's "legal heirs." On completion of the probate proceeding on November 5, 1930, the remainder estate was turned over to the trustees. Harry Joseph, a nephew and son of decedent's sister, Arabel Joseph, claimed to be a legal heir of the decedent. On August 13, 1930, Marquis E. Kidd and James M. Klepper, stepchildren of the decedent, instituted an action in equity in the Circuit Court of the City of St. Louis, Missouri, against the trustees, the life tenants, and Harry Joseph and Effa M. Shields, a niece of decedent, as legal heirs, as defendants. The plaintiffs prayed that they be adjudged to be the adopted children of the decedent, and entitled to his estate as pretermitted heirs. In August 1930, after the institution of such suit, Harry Joseph employed petitioner, on a contingent fee basis, to represent and defend his interest as an heir of decedent's estate. Petitioner filed an answer for Harry Joseph in the equity action. The firm of Bryan, Williams, Cave and McPheeters of St. Louis represented the trustees of the trust, the life beneficiaries, and Effa M. Shields, under a contingent contract dependent upon *197 their successful defense of such suit. The said action came to trial in the Circuit Court of the City of St. Louis on May 18, 1931, and an amended decree in favor of the plaintiffs was entered on January 29, 1932. On appeal, the Supreme Court of Missouri reversed the judgment and dismissed the complaint on July 17, 1934. An application for rehearing was overruled on September 18, 1934. After the final decision of the Supreme Court, Cave, representing his law firm and the petitioner, agreed that the attorneys' fees that accrued in such suit would be divided on a basis of two-thirds to the firm and one-third to petitioner. On or about November 14, 1934, testator's surviving sisters, Effa Shields, a niece, and Harry Joseph, a nephew, signed or acquiesced in an agreement that the attorneys' fees should be prorated between the life tenants and the remaindermen, and authorized the payment by the testamentary trustees of one-fourth of the accumulated trust income on hand and the current income as it accrued, and one-fourth of the corpus of the trust on the termination of the trust, and that such payments were to be divided one-third to petitioner and two-thirds to Cave's firm. Thereafter, *198 and at various times up to November 14, 1950, the trustees of the trust paid the total sum of $2,595.42 to petitioner as provided in said agreement. At the death of the last survivor of the four sisters of the testator in November 1950, the trust terminated. In order to discharge the outstanding obligations it was necessary to sell the trust real estate. To secure a policy of title insurance, it was necessary to have a judicial construction of decedent's will as to who constituted his "legal heirs." Accordingly, a suit was instituted by the trustees for a construction of the will. A decree was entered in said action holding that the term "legal heirs" as used in the will referred to the legal heirs living at the time of decedent's death. The decree further directed the trustees to pay to the law firm of Bryan, Williams, Cave and McPheeters, the sum of $17,354.14 from the corpus of the trust. On April 23, 1952, the latter firm paid to the petitioner, pursuant to their prior agreement in 1934 referred to herein, one-third of $17,354.14, or $5,784.71. The payments aggregating the amount of $2,595.42 during the years 1934 to 1950, and the payment of $5,784.71 in the taxable year *199 1952, were received by petitioner from the trust estate for personal legal services rendered in the Klepper will-trust litigation. The sum of $5,784.71 received by petitioner in 1952 was less than 80 per cent of the total compensation for personal services rendered by him in connection with such litigation. Opinion LEMIRE, Judge: The question presented is whether petitioner is entitled to the benefits of section 107(a) of the Internal Revenue Code of 1939, with respect to the receipt of $5,784.71, in the taxable year 1952. The respondent contends that section 107(a) is not applicable for the reason that the sum of $5,784.71, received in 1952, was less than 80 per cent of the total compensation of $8,380.13, received by the petitioner for legal services rendered by petitioner from September 1930 to October 1934. The petitioner contends that the amount of $2,595.42, received over the period 1934 to 1950 from the income of the trust estate, was a gift or gratuity, and hence the amount of $5,784.71 received in 1952, constituted 100 per cent of the total compensation. Petitioner, in the alternative, contends that the payments received prior to 1952, represented a separate source *200 of income and may not be combined with the 1952 payment for the purpose of determining the applicability of section 107(a). Furthermore, petitioner also argues that the 1952 payment was a gratuity. The record is so completely devoid of evidence indicating a gift or gratuity was intended that we are reluctant to believe that such contention is seriously advanced. The petitioner filed herein raises no such issue. Petitioner reported all the amounts in question as income. The record is replete with evidence that the total payments were received as compensation for the legal services rendered by petitioner in connection with the Klepper will-trust litigation. Evidence of any donative intent is wholly lacking. Petitioner has the burden to clearly establish that the receipt of 80 per cent of the total compensation was received in one taxable year. Estate of Marion B. Pierce, 24 T.C. 95; Drysdale v. Commissioner, 232 Fed. (2d) 633, affirming a memorandum opinion of this Court. [14 TCM 227, (M); T.C. Memo. 1955-71.]
Petitioner contends that the prior aggregate payments of $2,595.42 may not be combined with the 1952 payment of $5,784.71 *201 in determining the application of section 107(a) of the Code. This contention is apparently premised on the fact that the prior aggregate payments were made from trust income, while the 1952 payment was from trust corpus. We find no merit in that contention. The total compensation was received from a single employment. There was a continuity in all the services rendered in that they were for the purpose of protecting the interest which his client, Harry Joseph, claimed to have in decedent's estate. All the compensation received by petitioner was paid to him pursuant to the agreement made in 1934, after the successful defense of the will contest suit instituted by decedent's step-children. Petitioner's client was a signatory to that agreement. Unless the services themselves are divisible, the compensation received therefor, regardless of source, must be lumped together. George J. Hoffman, Jr., 11 T.C. 1057; Ralph E. Lum, 12 T.C. 375; Alfred J. Loew, 17 T.C. 1347, affd. 201 Fed. (2d) 368; Rosalyne A. Lesser, 17 T.C. 1479; and W. Harold Warren, 20 T.C. 378. On the present record we are convinced that *202 the total payments for compensation for petitioner's personal services must be considered together. Therefore, the payment of $5,784.71 received in the taxable year 1952, was less than 80 per cent of the total compensation paid to petitioner for the services rendered under his employment contract. We sustain the respondent's determination that section 107(a) of the Internal Revenue Code of 1939 is not applicable. Decision will be entered for the respondent.